IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Clyde Gravely, | Civil Action No. 8:06-2352-MBS-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | **OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Clyde Gravely, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 35 years old as of the second Administrative Law Judge's (ALJ) decision. (R. at 93, 270.) The plaintiff has a twelfth-grade education and has taken some additional classes at technical schools, with relevant past work as a laborer, security guard, textile cutter and stocker, dishwasher, cafeteria worker, maintenance technician, loom blower, and newspaper carrier. (R. at 130, 135, 138-61.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed a claim for DIB and SSI on April 29, 2002, alleging that he became disabled on March 29, 2002, due to neurological problems in his extremities. (R. at 93-96, 129, 270-75.) The plaintiff's applications were denied initially and upon reconsideration. (R. at 61-65, 68-70.) A hearing was held on June 11, 2003. (R. at 303-24.) On August 23, 2003, the ALJ found that the plaintiff was not disabled because he could perform other work in the national economy. (R. at 51-60.) On August 26, 2004, the Appeals Council granted the plaintiff's request for review and remanded the case for further proceedings. (R. at 83-85). A supplemental hearing was held on July 19, 2005. (R. at 325-66). The ALJ found that plaintiff was not disabled because he could perform other work in the national economy. (R. at 18-25). The Appeals Council denied the plaintiff's request for a review of the ALJ's second decision, (R. at 8-12), thereby making the ALJ's second decision the Commissioner's final decision of judicial review.

The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding his limitations from March 29, 2002, to October 1, 2003, are not credible.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments from March 29, 2002, to October 1, 2003 (20 CFR §§ 404.1527 and 416.927).

7. From March 29, 2002, to October 1, 2003, the claimant had the residual functional capacity to perform work with restrictions that require no lifting or carrying over 10 pounds and no standing and/or walking over two hours in an 8-hour workday. There are no other restrictions.

8. From March 29, 2002, to October 1, 2003, the claimant was unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416, 965).

9. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

11. The claimant acquired skills from his past relevant work that are transferable to other work within his residual functional capacity.

12. The claimant has the residual functional capacity to perform a full range of sedentary work (20 CFR §§ 404.1567 and 416.967).

13. Section 404.1569 of Regulations No. 4 and Rules 201.27, 201.28 and 201.29, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time from March 29, 2002, to October 1, 2003 (2o CFR §§ 404.1520(g) and 416.920(g)).

(R. at 24.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled.  Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give proper weight to the opinions of his treating physician; (2) failing to properly assess his subjective complaints of pain; and (3) making a residual functional capacity which did not include a manipulative limitation. The Court will address each alleged error in turn.

**I.    TREATING PHYSICIAN**

The plaintiff first contends that the ALJ failed to give the opinions of his treating neurologist, Dr. Michael Fry, controlling authority.  In May 2002, based uopn nerve conduction studies and clinical examinations, Dr. Fry diagnosed the plaintif with distal peripheral neuropathy. (R. at 239-40.)  In January 2003, Dr. Fry stated that the plaintiff was unable to engage in any type of employment because of "severe hand/leg weakness."  (R. at 238.)  He indicated that "[s]evere weakness and cramps of upper limbs secondary to peripheral neuropathy leads to inability to grip, lift [more than 10 pounds], stand, or walk greater than 50 yards."  *Id*.

In March, Dr. Fry further noted that "several nerve conductions show progression of difficulty with slowed UE and LE nerve conductions. LE peroneal motor nerve conduction has progressively worsened."  (R. at 266.)  In May 2003, following additional nerve conduction studies, Dr. Fry concluded that Gravely could not perform any work that required him to stand more than an hour or 2 a day, lift more than 5 to 10 pounds occasionally, or required fine or gross manipulation of objects on more than an occasional basis.  (R. at

5

242.) He further found that Gravely would have to lie down and rest for more than an hour during the work day. *Id*. The plaintiff complains that these opinions should have been controlling.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The ALJ's decision concerning the plaintiff's treating physician is supported by substantial evidence. The ALJ indicates that Dr. Fry's findings are not consistent with those

of "virtually every [other] examiner."[2]  (R. at 21.)   In support, the ALJ persuasively cites to the opinion of three specialists in the field of neurology who found no abnormalities in the plaintiff's strength or reflexes.  First, Dr. Joshua Hixson examined the plaintiff on May 16, 2002, and found that he had full motor strength in all upper and lower extremity muscle groups, normal deep tendon reflexes, intact sensation in the hands and feet, and no atrophy in the upper extremities.  (R. at 20, 222, 239-40.)  Second, in June 2003, based on a referral by Dr. Fry himself, a neurologist at the Medical University of South Carolina ("MUSC") observed no neurological or EMG findings consistent with neuropathy and suggested a possible psychiatric disorder, muscle disorder, or fibromyalgia.  (R. at 20-21, 246-48.)

Finally, in April 2005, a Dr. W. James Evans performed a comprehensive neurological exam and reviewed the results of the prior tests.  (R. at 256-58.)  The nerve conduction study was normal (R. at 260), and Gravely's cervical spine showed a loss of normal cervical lordosis (R. at 261).  His physical exam showed no abnormalities.  (R. at 256.)   Dr. Evans indicated that the plaintiff had no exertional postural, visual, or environmental limitations, (R. at 262-65) and that sitting was not affected by the impairment.  (R. at 263.)  Dr. Evans noted that the ability of his upper and lower extremities to push and/or pull was limited only by the cramping caused by repetitive movements.  (R. at 263.)  Ultimately, Dr. Evans was unable to confirm the diagnosis of multifocal mononeuropathy, although he expressed concerned "for the possibility of myopathy or possibly even early central nervous system abnormalities such as demyelinating disease . . . ."  (R. at 259.)

The plaintiff further complains that the ALJ did not consider the opinions of the state-agency consultants, whose findings were largely consistent with Dr. Fry's opinion that the

---

[2] The plaintiff, however, argues that the ALJ applied the wrong standard by concluding that Dr. Fry's opinions were simply "not supported" by, rather than inconsistent with, the conclusions of other doctors, as required by *Craig* and *Mastro*, *supra*.  The plaintiff's argument though, in this instance, is a matter of semantics.  A review of the other examinations as discussed further herein, demonstrates that they were, in fact, at odds with Dr. Fry's opinions and not simply unsupportive.

7

plaintiff's neurological impairment would be disabling. (R. at 225, 235.) The ALJ does not expressly reference the state-agency exams but implicitly refers to them when he says that "virtually" every examiner other than Dr. Fry found the plaintiff's impairments non-disabling. The only other examiners other than Dr. Fry who found the plaintiff disabled were the state-agency consultants. Moreover, the ALJ expressly avers that he "considered all of the medical opinions in the record regarding the severity of the claimant's impairments." (R. at 24.) It seems implicit, in the decision, therefore, that those agency examinations were considered.

Moreover, they agency consultants' opinions are largely cumulative to the plaintiff's evidence. They do not have the effect of transforming the above-identified findings of other examining physicians, relied upon by the ALJ, into something unsubstantial. The three examinations relied upon by the ALJ were relevant, persuasive, and more than substantial evidence upon which to conclude that Dr. Fry's opinions should not be controlling. The fact that the plaintiff can produce evidence to the contrary is simply of no moment. *Blalock*, 483 F.2d at 775.

The plaintiff also argues that Dr. Evans examination in 2005 can have no ability to contradict the determinations by Dr. Fry, in 2002 and 2003. While the Court does not completely agree, even in the absence of Dr. Evans' opinions, the ALJ had substantial evidence in the opinions of Dr. Hixson and the MUSC physician to the opinions of Dr. Fry.

**II.     The Plaintiff's Credibility**

The plaintiff next contends that the ALJ failed to properly assess the credibility of his subjective complaints of pain. Specifically, the plaintiff alleges that the ALJ focused on irrelevant or improper considerations in concluding that the plaintiff was not fully credible, including lack of objective findings, the plaintiff's attempts to attend college, and lack of hospitalization and emergency room visits.

As an initial matter, federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations.

*See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff does not make any real argument that the ALJ failed to employ the proper analytical framework and could not reasonably do so. The ALJ did, in fact, analyze the plaintiff's subjective complaints of pain in accordance with the two step process described above. (R. at 22.) The ALJ first determined that the plaintiff suffered from an impairment capable of producing some of the pain alleged but then concluded that the intensity, persistence and functionally limiting effects of such pain was not fully consistent with the plaintiff's own representations. *Id*. The ALJ so concluded based on the "claimant's

9

activities, particularly his attempts to go to college; the absence of hospitalizations or emergency room visits; the absence of definitive diagnosis; the lack of demonstrated functional limitation on examination; and the paucity of objective findings." *Id*.

The plaintiff first argues that the ALJ was especially in error to consider the plaintiff's attempts to attend college as diminishing his credibility because the plaintiff actually had to withdraw from his classes, in large part, because of his impairments. The ALJ concluded that the 18-hour, "full" course load of the plaintiff suggested that the plaintiff's impairment was not as limiting as he represented. (R. at 21-22.) The plaintiff, of course, argues that such a determination is wholly unreasonable in light of the plaintiff's failure to complete such a coarse load *because* of his impairment. The defendant argues that the plaintiff withdrew for personal reasons unrelated to his impairment.

The Court has reviewed the plaintiff's testimony concerning his decision to withdraw from classes and finds that the ALJ had substantial evidence to conclude that such reasons were unrelated to his impairment. The first time the plaintiff was questioned by the ALJ concerning his withdrawal from school, the plaintiff stated, without qualification, that he withdrew because of "marriage problems." (R. at 340.) The second time the plaintiff was questioned by the ALJ the plaintiff again agreed unequivocally that he left school for "family problems." (R. at 345.) Only after the ALJ repeated the question again, did the plaintiff also add that he had experienced difficulty performing in the classroom as a result of his impairment. *Id*. Finally, the ALJ later attempted to clarify the reasons for the plaintiff's various withdrawals from school and the plaintiff this time stated that it was a result of having been evicted and living at a transitional housing program. (R. at 349-50.) The plaintiff made no mention of the impairment as a factor in his decision.

The plaintiff might not agree with the ALJ's decision. Another adjudicator might have reached a different conclusion than the ALJ. But the Court finds that the plaintiff's testimony was more than substantial evidence upon which the ALJ could conclude that the plaintiff withdrew for reasons unrelated to his impairments and, therefore, that he had

undertook a rigorous daily activity which he would have likely completed but for his "situational problems" (R. at 350). It was a reasonable and documented factor to include in the ALJ's credibility analysis. The Court cannot reverse the decision to include that consideration when there was substantial evidence for it.[3]

The plaintiff next argues that the ALJ improperly required objective findings to support the plaintiff's subjective allegations of pain. The ALJ, however, did not so require. He simply concluded that the objective findings were wanting. It is proper and necessary for the ALJ to consider the strength of the objective findings in making his credibility determination. Specifically, such an evaluation must "take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history . . . any *objective medical evidence of* pain and any other evidence relevant to the severity of the impairment, such as the claimant's daily activities . . . ." *See Craig*, 76 F.3d at 595 (emphasis added).

Finally, the plaintiff argues that the ALJ's emphasis on the lack of emergency room visits and hospitalizations was exaggerated insofar as the plaintiff's condition is simply not of the kind that would be given to requiring such care. Even conceding the plaintiff's point, the ALJ had other substantial evidence, in the form of his school efforts and the lack of quality of the objective findings, to discount the plaintiff's credibility. Moreover, the ALJ also relied upon an absence of functional limitations demonstrated at numerous examinations, already discussed by the Court above, Section I. Altogether, the lack of hospitalizations and emergency room visits surely did not represent a substantial basis for the ALJ's decision and would not warrant a reversal or remand even if it was an erroneously cited consideration.

---

[3] The plaintiff argues that evidence that the plaintiff attempted to take an 18-hour course load says nothing about his ability to participate in a 40-hour work week. But that is not what the ALJ concluded. The plaintiff's full course load was simply an indication to the ALJ that the pain the plaintiff alleged was simply not as severe as described.

The Court finds no error in the ALJ's credibility analysis and finds that his conclusion in that regard was based on substantial evidence.

### III.     Manipulative Limitations

Lastly, the plaintiff contends that the ALJ ignored evidence of manipulative limitations, concerning the plaintiff's ability to grasp, hold, or otherwise engage in the fine manipulation of objects. The plaintiff again emphasizes the findings of Dr. Fry and the state-agency consultants who found that the plaintiff was limited in this regard. (R. at 229, 235, 242.) The Court has already concluded that there existed substantial evidence for the ALJ to discount the weight given to Dr. Fry's opinion as a treating physician and, further, that the ALJ did not appear to have actually "ignored" the agency consultants' findings. Notwithstanding, the Court is concerned that the ALJ did not give any explanation for his rejection of the manipulative limitations reflected in the reports of those examiners in the course of his RFC assessment. While those opinions were not entitled to controlling weight, they certainly raised the prospect of a manipulative limitation that the ALJ failed to discuss in any meaningful and reviewable way. The ALJ's decision simply includes no discussion of the plaintiff's manipulative limitations, if any. For the Court to conclude that substantial evidence exists to reject such a limitation, the ALJ must have identified such evidence and reasoning in the first instance; he did not.

This failure is relevant in two ways. First, it likely effects the propriety of the ALJ's reliance on the grid rules, which is only proper when the plaintiff does not suffer from non-exertional limitations. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989). The manipulative limitation alleged by the plaintiff would be considered "nonexertional." *See* 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

Second, the Vocational Expert ("VE") specifically testified, in response to questioning by the plaintiff's attorney, that the presence of a limitation on the plaintiff's ability to engage in the gross and fine manipulation of objects on more than an occasional basis would, in

conjunction with his other limitations, eliminate his ability to participate in any work. (R. at 362.) The ALJ included no manipulative limitations in his hypotheticals to the VE.

The ALJ may have substantial reason for rejecting the manipulative limitation as being supported by the evidence, but he did not share it in his decision. Accordingly, the Court cannot review it.

On remand, the ALJ should reconsider the plaintiff's evidence of manipulative limitations and state a basis for either accepting or rejecting such evidence. To the extent, the ALJ finds that the plaintiff suffers such limitations, he should submit the revised RFC to a VE for reconsideration of whether jobs exist in the economy, which the plaintiff can perform.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

December 10, 2007
Greenville, South Carolina